**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

INTELSAT GLOBAL SALES &
MARKETING LTD.,

                  Plaintiff,

    - vs -

SUPERNET LIMITED,

                  Defendant.

Case No. 21-cv-

**ECF CASE**

**JURY TRIAL DEMANDED**

## COMPLAINT

Intelsat Global Sales & Marketing Ltd. ("Intelsat"), for its Complaint against Defendant Supernet Limited ("Supernet"), hereby alleges as follows:

### NATURE OF THE ACTION

1.    This is a straightforward breach of contract case.  Supernet agreed to pay for satellite communications services from Intelsat in a Master Services Agreement, and Supernet submitted a series of service orders pursuant to that agreement.  But at the end of 2020, Supernet refused to honor its promises.  Worse still, when advised that any termination would still leave Supernet on the hook for fees related to a service order through 2023 that it had already placed, Supernet told Intelsat that Supernet would intentionally breach its obligations and would bog Intelsat down for years in the courts of Pakistan, where Supernet is based, if Intelsat decided to enforce its rights.  Intelsat files this lawsuit because it is not willing to let Supernet flout its legal obligations and renege on its promises without consequence.

2.    Intelsat thus commences this action for breach of Master Service Agreement No. 24582, dated August 29, 2011 (the "MSA," attached as **Exhibit A**), and the associated Service Order No. 28016, last amended by Amendment 7 on December 27, 2018 (the "Service Order,"

attached as **Exhibit B**).  In addition, because Intelsat is currently reorganizing pursuant to chapter 11 of the U.S. Bankruptcy Code, it demands, as required by 11 U.S.C. § 542, that all sums owed by Supernet be promptly turned over to its bankruptcy estates.

3.　　　Intelsat seeks recovery for at least $10,047,322.00 owed by Supernet under the MSA and the Service Order.  Supernet's failure to perform its remaining contractual obligations through the service end date is not justified.  Intelsat also seeks pre and post-judgment interest, costs, and attorneys' fees for Supernet's clear, obvious, and blatant breach of contract.

## THE PARTIES

4.　　　Plaintiff Intelsat Global Sales & Marketing Ltd. is a limited company incorporated in England and Wales with its primary place of business in London, England.

5.　　　Intelsat and its affiliates operate the world's largest and most advanced satellite fleet and connectivity infrastructure.  Intelsat operates worldwide by marketing and selling fixed satellite services to media and communications companies, multinational corporations, internet service providers, government, and military organizations.

6.　　　Supernet is a Pakistan-based satellite network service provider and systems integrator.  It is incorporated under the laws of Pakistan with its principal place of business at 75 East Blue Area, Fazal-a-Haq Road, Islamabad, Pakistan.

## JURISDICTION AND VENUE

7.　　　This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1334.  Plaintiff is a chapter 11 Debtor in a currently-pending bankruptcy case in the United States Bankruptcy Court for the Eastern District of Virginia.  This suit is being pursued for the benefit of Intelsat's creditors.

8.　　　This Court has personal jurisdiction over Defendant Supernet and venue is proper in this District because Supernet consented to personal jurisdiction and venue in the forum

selection clause within Section 14.2 of the MSA, which provides in pertinent part that "[t]he Parties shall submit to the jurisdiction of the Federal District Court for the Southern District of New York to resolve any dispute."

9.     The MSA also specifies that it "will be governed by the laws of the state of New York without regard to any conflict of laws provisions," and that "service of any process will be deemed sufficient upon actual delivery of such process at the address provided" in the agreement. MSA §§ 14.1-14.2.

## FACTUAL BACKGROUND

10.     For over nine years, Intelsat has provided satellite communication services to Supernet under the MSA, which became effective on August 29, 2011.  The MSA was executed by Patricia Casey, Senior Vice President and Deputy General Counsel of Intelsat, and Malik Imran Khan, Chief Executive Officer of Supernet, and has been assigned to Intelsat Global Sales & Marketing Ltd.

11.     The MSA expressly provides that "[s]ervices will be provided by Intelsat to [Supernet] on a 24 x 7 basis . . . pursuant to a service order contract . . . which will be governed by the terms of this Agreement."  MSA § 1.1.  The MSA itself had an initial term of 12 months, which thereafter would continue "until terminated by either Party on 20 days written notice, except that the terms of this [MSA] will continue to apply to any Service Order as long as such Service Order remains in effect."  MSA § 1.3.

12.     In accordance with the MSA, service order contracts have been issued from time to time, under which Supernet purchased specified satellite communication services on the terms and conditions contained in the service order contract, which include the service fees payable by Supernet, the billing method, and the payment terms.  The last such contract is the operative Service Order No. 28016, Amendment 7, which was duly accepted and signed by both parties on

December 27, 2018.   Service Order No. 28016 was initially signed with a term ending on December 31, 2021. Attached hereto as **Exhibit C** is a true and correct copy of Service Order No. 28016, prior to amendment.  Through Amendment 7, Supernet extended their transponder services until December 31, 2022, in exchange for a reduction in their rate, which was reduced from $2,500 per MHz per month to $1,900 per MHz per month. Upon signature of Amendment 7, Supernet already owed a debt of $1,397,151.22, which Intelsat agreed that Supernet would clear through a payment plan agreed to between the parties within Amendment 7.

13.     By letter dated November 26, 2020, Supernet wrote to Intelsat purportedly to terminate its services under the MSA and the Service Order pursuant to Section 1.3 of the MSA. Attached hereto as **Exhibit D** is a true and correct copy of the November 26, 2020 correspondence.

14.     On November 30, 2020, Intelsat responded to Supernet and detailed that while Section 1.3 allows for termination of the MSA (on 20 days' written notice), the same provision provides that any service order signed previously remains in full force and effect in the case of such termination, and the terms of the MSA continue to apply to such service order.  Hence, the termination was not effective for the Service Order, which still remains in full force and effect. Attached hereto as **Exhibit E** is a true and correct copy of the November 30, 2020 correspondence. The letter also detailed Supernet's outstanding debt of $1,384,340.00 for services rendered and the remaining fees applicable under the Service Order through the agreed service end date, which amounted to $9,447,750.00 as of December 1, 2020.

15.     On December 7, 2020, having received no payment or acceptable response from Supernet, Intelsat sent a subsequent letter to Supernet reiterating that the termination of the Service Order was not valid and that Supernet had outstanding debt which now totaled $1,762,250.00 for services through December 31, 2020.  Attached hereto as **Exhibit F** is a true and correct copy of

the December 7, 2020 correspondence.  In addition, Intelsat stated that Supernet will owe termination fees of $9,069,840.00 in the case of a termination for non-payment, which Intelsat would seek, along with costs of collection and litigation, should Supernet continue to fail to honor its contractual obligations under the Service Order.

16.     The MSA, which continues to apply to the Service Order following termination of the MSA, provides that Intelsat "may terminate . . . any Service Order immediately upon notice to [Supernet] if: (a) [Supernet] does not pay Charges in accordance with Section 4 and such Charges remain unpaid for more than five (5) days after Intelsat notifies [Supernet] for such non-payment." MSA § 7.2.  In the event of termination under this section, the MSA provides that "Intelsat will be entitled to a 'Termination Fee' equal to the total Charges for the remainder of the service term in the applicable Service Order(s)."  MSA § 7.3.

17.     Charges are due pursuant to the Service Order in advance, no later than the first calendar day of the month in which the service will be provided.  MSA § 4.1 and Service Order, "Billing Method."  Should payment not be received by the due date, "Intelsat is entitled to charge late payment interest at 1.5% per month or the highest rate permitted by law (if less) on any amount not received by Intelsat by the due date, from such due date until Intelsat receives full payment." MSA § 4.3.

18.     Also on December 7, 2020, Intelsat provided formal legal notice through counsel, stating that should Supernet fail to make payment as required, contractual termination fees would be due immediately.  Attached hereto as **Exhibit G** is a true and correct copy of Intelsat's December 7, 2020 legal notice.  This notice further provided that Intelsat is entitled to contractual late payment interest until Intelsat receives full payment, plus all costs and expenses incurred for recovery of the outstanding amount.  Supernet was advised that should it fail to make payment

with late payment interest by December 15, 2020, appropriate proceedings would be filed for recovery of amounts due and payable, including termination fees.

19.     Finally, by letter dated December 15, 2020, Intelsat notified Supernet that it remained in material breach of contract, and that Intelsat was officially terminating services under the Service Order as of 19:00 UTC on December 15, 2020, as allowed under MSA Section 7.2. Attached hereto as **Exhibit H** is a true and correct copy of the December 15, 2020 correspondence. In that letter, Intelsat detailed that Supernet had an outstanding amount due of $1,567,199.68 for services up to December 15, 2020 (which was due and payable as of December 1, 2020) (the "Outstanding Amount"), and that following termination, Supernet is liable for full termination fees amounting to $9,264,890.32 (which were due immediately) (the "Termination Fee"), plus applicable late payment interest and costs of collection and litigation which, as of the date of this filing, was $520,640.94.

20.     To date, Supernet still has not made any payment of the Outstanding Amount, the Termination Fee, or the applicable late payment interest.  Intelsat attempted to work with Supernet to obtain payments of the amounts owed.  Supernet, however, refused to engage with Intelsat concerning payment.  Supernet admitted that it owed the amounts sought by Intelsat.  But it refused to pay, claiming that if Intelsat wanted, it could seek the funds by suing Supernet in the courts of Pakistan, which would take many years to process Intelsat's claim.

21.     Supernet is thus an admitted scofflaw, openly refusing to honor a contract that it willingly signed.  Supernet's continued failure to make payments of amounts due and payable under the MSA and the Service Order is a breach of these agreements.  Even if the MSA was validly terminated, the Service Order signed prior to the termination remains in full force and effect until its agreed service end date on December 31, 2022.

22.     Supernet's non-payment of the Outstanding Amount to Intelsat also triggered the Termination Fee under the MSA, which is now also due and owing, along with late payment interest.  Supernet's failure to pay the Outstanding Amount and the Termination Fee with interest are material breaches of the MSA and Service Order.

## CAUSES OF ACTION

## COUNT I

### (Breach of Contract)

23.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 22 as if fully set forth herein.

24.     Intelsat and Supernet entered into the MSA on August 29, 2011.  The MSA has been properly assigned to Plaintiff Intelsat Global Sales & Marketing Ltd.

25.     Intelsat and Supernet further entered into the Service Order on December 27, 2018.

26.     The MSA and Service Order are valid and enforceable contracts.

27.     Intelsat complied with and performed all of its obligations under the MSA and Service Order.

28.     Supernet, by contrast, has breached the MSA and Service Order.  Supernet failed to make payments for services for charges due as required under the terms of the MSA and Service Order.

29.     As a direct consequence of Supernet's breach of contract, Intelsat has been damaged in the amount of at least $10,047,322.00, which is the amount justly due and owing to Intelsat, plus interest through the date that Supernet's obligation is satisfied in full.

## COUNT II

### (Turnover)

30.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 29 as if fully set forth herein.

31.     Intelsat and Supernet entered into the MSA on August 29, 2011.

32.     Intelsat and Supernet further entered into the Service Order on December 27, 2018.

33.     Intelsat advised Supernet in writing that, pursuant to the MSA and the Service Order, Supernet owes a debt to Intelsat in the amount of at least $10,047,322.00, plus interest, costs, collection fees and attorneys' fees.

34.     Supernet's debt to Intelsat of $10,047,322.00 is not subject to any bona fide dispute.

35.     Intelsat demanded that Supernet pay the sum owed, but Supernet refused to do so.

36.     Supernet has no valid rights of setoff against any of the amounts that it owes Intelsat.

37.     The sums owed Intelsat by Supernet are property of the estate of Intelsat Global Sales & Marketing, Ltd., a chapter 11 debtor in jointly administered case Case No. 20-32299 (KLP), United States Bankruptcy Court, Eastern District of Virginia.

38.     Pursuant to 11 U.S.C. § 542, Supernet has a legal obligation to turn over all property to the debtor, Intelsat Global Sales & Marketing Ltd.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request judgment as follows:

1.     Awarding monetary damages in favor of Plaintiff, in an amount to be determined at trial, but in no event less than $10,047,322.00, plus interest;

2.     Awarding pre-judgment and post-judgment interest to the extent allowed by law;

3.     Awarding Plaintiff their costs and attorneys' fees; and

8

4.      Granting Plaintiff such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff respectfully demands a trial by jury of all issues triable by a jury.

Dated: New York, NY
        March 22, 2021                          */s/ Alexia R. Brancato*
                                               Alexia R. Brancato
                                               **KIRKLAND & ELLIS LLP**
                                               601 Lexington Avenue
                                               New York, New York 10022
                                               Telephone:     (212) 446-4800
                                               Facsimile:     (212) 446-4900
                                               Email: Alexia.Brancato@Kirkland.com

                                               - and -

                                               Michael B. Slade (*pro hac vice* admission
                                               forthcoming)
                                               **KIRKLAND & ELLIS LLP**
                                               300 North LaSalle
                                               Chicago, Illinois 60654
                                               Telephone:     (312) 862-2000
                                               Facsimile:     (312) 862-2200
                                               Email: Michael.Slade@Kirkland.com

                                               *Counsel for Plaintiff*